THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
Monica Reyes-Santiago, Esq. (SBN 339807)
19800 MacArthur Blvd, Suite 1000
Irvine, CA 92612
Telephone:(949) 825-5200
Facsimile: (949) 313-5001
Email: cameron@sethatlaw.com

Attorneys for Gustavo Mares

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO MARES; Individually<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; A Governmental Entity;<br>Devon Steuerwald, Individually; Joseph Mora, Individually, and DOES 1 through 10,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure - Fourth Amendment (42 U.S.C. §1983)<br>2. Excessive Force - Fourth Amendment (42 U.S.C. § 1983)<br>3. *Monell* Liability for Unconstitutional Custom, Policy and Practice (42 U.S.C. § 1983)<br>4. Inadequate Training-Municipal Liability (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1. This case challenges the excessive force used by two San Bernardino Sheriff's deputies assigned to the Victor Valley Patrol Station in executing an arrest of Plaintiff, Gustavo Mares ("MARES"), on August 17, 2020. Plaintiff was laying on his stomach, passive and compliant when the deputies approached him in an aggressive and hostile demeanor. The deputies not only knee struck MARES multiple times on his upper left torso while he was being held down by two deputies, but they also struck his head with a plethora of rapid knee strikes and elbow strikes, causing MARES to lose his consciousness. Following the assault, MARES' arms were cuffed behind his back before he was thrown in the back of the police car. As he came in and out of consciousness, MARES begged the deputies to take him to a hospital. He was first taken to a hospital where he could not be helped. MARES was then taken to St. Mary Hospital in Apple Valley, where he was kept for eight hours and diagnosed with a closed head injury and excess cerebrospinal fluid leak into his brain called Normal Pressure hydrocephalus[1], or a puddle of spinal fluid leaked into a ventricle of the brain as a result of the strikes to his head. This resulted in swelling of his left frontal and periorbital soft tissue, blurred vision, dysarthria (difficulty speaking caused by brain damage), diplopia (double vision), persistent strong headaches, nausea, muscle spasms and lower left extremity numbness. MARES' condition continued to deteriorate until he required a spinal tap to drain the fluid in his brain.  MARES also suffered from dislocated metal plates in his jaw from a previous surgery. MARES also suffered from dislocated metal plates in his jaw from a previous surgery.

---

[1] "Normal" Pressure Hydrocephalus is an abnormal condition of the brain, albeit the deceiving name.

2. The use of force against Plaintiff to seize his person was unconstitutional and violated clearly established law that would have been known to any reasonable peace deputy.

## JURISDICTION AND VENUE

3. This case arises under 42 U.S.C. § 1983. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e) in that (1) the unlawful actions challenged herein occurred in the Central District; and (2) all of the parties reside in the Central District.

## PLAINTIFFS

5. Plaintiff, Gustavo MARES, at all relevant times was a resident of the County of San Bernardino, State of California.

## DEFENDANTS

6. Defendant County of San Bernardino ("County") is a government entity that acts through individuals and to establish its policies and is capable of being sued in federal court.

7. Defendant Devon Steuerwald ("STEUERWALD") is a Deputy Sheriff, he was a duly authorized employee and agent County of San Bernardino, and was acting under color of law within the course and scope of his perspective duties as a Deputy Sheriff and with the complete authority and ratification of his principal, the COUNTY. Defendant STEUERWALD is being sued in his individual capacity.

8. Defendant Joseph Mora ("MORA") is a Deputy Sheriff, he was a duly authorized employee and agent of the County of San Bernardino, and was acting under color of law within the course and scope of his perspective duties as a Deputy Sheriff and with the complete authority and ratification of his principal, the County. Defendant MORA is being sued in his individual capacity.

9. Plaintiff is unaware of the true identities and capacities of Defendants DOES 1 through 10 but upon information and belief, said DOES are employees of the County of San Bernardino. Each of the fictitiously named Defendants is in some manner and to some extent liable for the injuries alleged in this Complaint. Plaintiff will seek leave to amend this Complaint to allege the true identities and capacities of those fictitiously named Defendants when they are determined.

10. At all relevant times, the unknown named Defendants were Deputies of the Victor Valley Patrol Station and employees and agents of the County of San Bernardino. Each Defendant is, and at all times mentioned was, the agent, employee, representative, successor and/or assignee of each other Defendant. At all times herein mentioned, each and every Defendant had the legal duty to oversee and supervise the hiring, conduct, employment and discipline of each and every other Defendant herein. Each Defendant, in doing the acts, or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority, or the alleged acts and omission of each Defendant as an agent subsequently were ratified and adopted by each other Defendant as principal.

11. At all times relevant to this Complaint, each Defendant acted under the color of state law.

12. Each of the individual Defendants was in some way responsible for the Constitutional violations alleged in this Complaint.

13. In committing the acts alleged in this Complaint, Defendants acted knowingly, maliciously and with reckless or callous disregard for the Constitutional rights of Plaintiff, justifying an award of punitive damages under federal and California law against each individual Defendant.

## **FACTUAL ALLEGATIONS**

14. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 13 in this Complaint with the same force and effect as if fully set forth herein.

15. On August 17, 2020, MARES was waiting for his family in a field in the back of a Walmart. After seeing another car coming, he turned on his car and started driving. MARES had been driving for about a minute when the car that had followed him out of the field lit their cop lights.

16. MARES was driving away from the police when his vehicle crashed against a tree. At that point, MARES got out of the vehicle, and was chased by Defendants STEUERWALD and MORA.

17.  Once they reached MARES at an alleyway, STEUERWALD pulled out his department-issued firearm and commanded him to stop. Once he stopped, MARES put up his hands and was instructed by STEUERWALD to lie on the ground and put his hands out into a "T" position. MARES, aware of the circumstances and with nowhere to run, complied with the Defendants' commands and began to move his hands towards his body to place them behind his back for the arrest.

18. Seeing MARES moving his arms in an effort to comply, STEUERWALD placed his left knee against his back and pressed his body weight against him, pinning him in place. As STEUERWALD continued to place his weight on MARES' back, he kept commanding him to put his hands behind his back.

19. As MARES tried to move his hands behind his back so he could comply, STEUERWALD proceeded to knee strike his upper left torso multiple times. Instead of asking his partner Deputy MORA to pepper spray MARES and

de-escalate the situation, Defendants chose to escalate the situation by upping the amount of force used against MARES.

20. Despite being unarmed and following the Deputies' orders to lay on the ground flat on his face, Deputy MORA began to push down on MARES' upper back while STEUERWALD continued to press his knee into his back. Deputy MORA then continued to command MARES to put his hands behind his back, even though he was pinned under the two deputies and unable to move.

21. Deputy MORA proceeded to deliver a multiple rapid knee strikes to MARES' right cheek and head, resulting in MARES flailing in reaction to the assault. As MARES struggled to comply under the weight of the two men, Deputy MORA proceeded to deliver another set of rapid elbow strikes to MARES' left cheek and head area. MARES lost consciousness as a result of the blows.

22. Following the elbow strikes, Deputy STEUERWALD forcibly removed and took MARES' arms and cuffed him behind his back, before throwing him in the back of the police car. As he came in and out of consciousness, MARES begged the deputies to take him to a hospital. He was taken to Victor Valley Hospital where they could not help him as they had no CT Scan Machine.

23. MARES was then taken to St. Mary Hospital in Apple Valley, where he was kept for eight hours and diagnosed with a closed head injury and excess cerebrospinal fluid leak into his brain called Normal Pressure hydrocephalus, or a puddle of spinal fluid leaked into a ventricle of the brain as a result of the strikes to his head.

24. Normal Pressure Hydrocephalus ("NPH"), is anything but "normal", but rather describe an abnormal leakage of cerebrospinal fluid into a brain cavity, albeit, the pressure of the fluid being of normal range, and is typically caused due to blunt force trauma to the head. This excess fluid buildup in the brain ventricles cause pressure against the brain and can lead to brain damage, and sometimes

death. Morbidity rates of patients suffering from NPH are elevated as the condition can cause symptoms and conditions consistent with Mr. MARES' condition including hypotensive headaches, poor balance, trouble walking, falling, forgetfulness, confusion, mood changes and depression. A common treatment to treat NPH is to engage in invasive neurosurgery to place a shunt into the brain in an attempt to remove the excess cerebrospinal fluid buildup.

25. The next day, on August 18, 2020, MARES was taken to St. Mary Medical Center in Apple Valley for a jail check after he reported feeling dizzy and nauseous while in jail. There, he underwent a CT scan which revealed swelling of his left frontal and periorbital soft tissue as a result of the trauma, pointing to possible mild normal pressure hydrocephalus. A follow up nuclear scan was encouraged to be considered.

26. However, MARES' condition continued to deteriorate over the following 2 years. On the morning of May 11, 2022 Mr. MARES was taken back to St. Mary Medical Center after he fainted when he stood up. He reported having a syncopal episode which caused him to suffer from blurred vision, dysarthria (difficulty speaking caused by brain damage), left side numbness and slurred speech. A CT Scan revealed a slight interval worsening of hydrocephalus compared to his prior exam performed on August 18, 2020. MARES' ventricular system was enlarged with a combined lateral ventricle of 49mm, compared to the 46mm prior measurement. As a result of his worsening hydrocephalus, MARES had to be transferred to a higher level of care facility for a neurosurgical evaluation. He was transferred to Arrowhead Regional Medical Center in Colton, California via an ambulance, but was discharged.

27. On May 20, 2022, MARES underwent a neurology consult at Loma Linda University Health in Loma Linda after he presented to the ER with a persistent headache associated with photophobia, diplopia (double vision), nausea

and lightheadedness most consistent with status migrainous and visual changes. He reported headache with a pounding frontal pressure and dull occipital headache that was rated an 8 out of 10 which woke him up from his sleep at least twice weekly. He also reported constant tingling and numbness on his lower left extremity. There, doctors found that there was moderate cortical atrophy which was considered advanced for MARES' age, and he set up sent for additional testing.

28. On May 21, 2022 MARES underwent a lumbar puncture at Loma Linda University Health, a procedure where spinal fluid was drained via a spinal needle inserted at the L3-L4 interspace. This procedure revealed an abnormal fluid count in his brain, which resulted in a diagnosis of post-traumatic hydrocephalus and a referral to the neurology department for further evaluation, which will determine if MARES will need a permanent shunt inserted at the base of his skull to keep the fluid levels in his brain steady.

29. As a result of unjustified use of force inflicted upon him, Plaintiff was deprived of his interests protected by the Constitution or laws of the United States, and defendants caused all such deprivations while acting under color of state law.

30. All acts or omissions alleged to have been engaged by any individual Defendants were committed with evil motive and intent, and in callous, reckless, and wanton disregard to the individual rights of Plaintiff.

## COUNT ONE

### UNREASONABLE SEARCH AND SEIZURE - FOURTH AMENDMENT
### (Against Defendants STEUERWALD, MORA, and DOES 1 through 10)

31. The allegations set forth in paragraphs 1-2 and 14-30 are incorporated herein by reference.

32. Defendants STEUERWALD, MORA, and DOES 1 through 10, while working as agents of the County of San Bernardino and acting within the course and scope of their duties, caused MARES to be detained and arrested, in violation of his right to be secure in their persons against unreasonable searches and seizures, as guaranteed to him under the Fourth Amendment to the Constitution of the United States and applied to state actors by the Fourteenth Amendment.

33. As a result of this conduct, Defendants are liable to Plaintiff for his injuries, because they were integral participants in the unreasonable detention and arrest, or because they failed to intervene to prevent these violations from occurring.

34.  As a result of this conduct, Defendants are liable to Plaintiff for his injuries, because they were integral participants in their reckless conduct. As a direct and legal result of Defendants' acts and omissions, and the injuries of Plaintiff, he has suffered damages, including, without limitation, medical expenses, and the past and future pain and suffering, all to his general and special damages and past and future medical expenses according to proof, including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

35. Plaintiff is informed and believes and hereon alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of their rights, welfare, and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## COUNT TWO

### EXCESSIVE FORCE - FOURTH AMENDMENT
### (Against Defendants STEUERWALD, MORA, and DOES 1 through 10)

35. The allegations set forth in paragraphs 1-2 and 14-3434are incorporated herein by reference.

36. Defendants STEUERWALD, MORA, and DOES 1 through 10, while working as agents of the County and acting within the course and scope of their duties, caused MARES to be assaulted multiple times, with the intent of inflicting serious injury long after Plaintiff was being compliant, on the ground, and posed no threat to the Deputies or those around him. Without warning or provocation, Defendant STEUERWAD struck Mr. MARES with his knee on his upper left back. Defendant MORA then proceeded to place his hands on Mr. MARES' shoulders and push his weight him as he then hit Mr. MARES' left cheek with his knee. When Mr. MARES began to flail in pain, MORA proceeded to elbow his left cheek. Mr. MARES lost his consciousness as a result of the blows.

37. All aforementioned acts were in violation of Plaintiff's right to be secure in their persons against an unreasonable seizure guaranteed by the Fourth Amendment to the United States Constitution.

38. As a result of this conduct, Defendants are liable to Plaintiff for his injuries, because they were integral participants in their reckless conduct. As a direct and legal result of Defendants' acts and omissions, and the injuries of Plaintiff, he has suffered damages, including, without limitation, medical expenses, and the past and future pain and suffering, all to his general and special damages according to proof, past and future medical expenses, including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

39. Plaintiff is informed and believes and hereon alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of their rights, welfare, and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## COUNT THREE

## MONELL LIABILITY FOR CUSTOM, POLICY, AND PRACTICE
### (Against Defendant COUNTY OF SAN BERNARDINO, STEUERWALD, MORA and DOES 1 through 10)

40. The allegations set forth in paragraphs 1-2 and 14-39 are incorporated herein by reference.

41. At all times herein mentioned the Defendants STEUERWALD, MORA, and DOES 1 through 10, were employees of the County, acting under the direction and control of Defendant County. Defendant County of San Bernardino knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. These customs, policies, practices and usages required and encouraged the employment, deployment and retention of persons, as peace deputies, who have a propensity for violence, excessive force, dishonesty, and additional abuses of their duties as peace deputies in the employment of the County.

42. Defendant County knowingly maintained or permitted an official policy or custom of permitting the occurrences of the types of wrongs alleged herein by, among other things, failing and refusing to meaningfully investigate or discipline Police Deputies known to have repeatedly violated the constitutional rights of the public.

43. Additionally, Defendant County has displayed a deliberate indifference to the rights of citizens and, based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), they are liable for all injuries sustained by Plaintiff as set forth herein.

44.  Defendant County bears liability because their policies, practices and/or customs were a cause of Plaintiff's injuries. Defendant County and their officials maintained or permitted a policy, practice and custom of permitting, encouraging and ratifying the use of unnecessary and unreasonable force, false arrest and acting with reckless indifference to the constitutional rights of members of the public by its police deputies by, among other things:

      a. Failing to discipline Deputies known to have a propensity for violence, the use of unnecessary and unreasonable force, false arrest and/or dishonesty;

      b. Continuing to assign such deputies to duties where they are likely to, and indeed do, injure members of the public;

      c. Writing false reports and giving false testimony to cover up acts of misconduct, including, but not limited to, the use of unnecessary force, false arrest and/or dishonesty by its deputies and thereby conveying to them its approval and/or lack of concern about police misconduct;

      d. Refusing to discipline adequately individual Deputies and employees found to have committed similar acts of abuse and misconduct;

      e. Refusing to investigate competently and impartially allegations of abuse and misconduct alleged to have been committed by County of San Bernardino employees, including the allegations made by Plaintiff in this case;

f. Planting evidence or withholding evidence in favor of the participant deputies to favor the same deputies' version of the police misconduct;

g. Reprimanding, threatening, intimidating, demoting firing and otherwise retaliating against deputies who reported acts of abuse by other deputies;

h. Rewarding deputies who displayed aggressive and abusive behavior toward detainees, arrestees, and members of the public;

i. Condoning and participating in the practice of reducing or dismissing criminal charges against individuals in return for releasing the County and employees of the County of San Bernardino from civil liability;

j. Condoning and encouraging deputies' beliefs that they can violate the rights of persons such as the Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

k. Promoting and/or acquiescing in the policy of stopping, detaining, questioning, and arresting members of the public without probable cause or reasonable suspicion;

l. Sanctioning, condoning and approving a department wide code of silence, a euphemism for perjury and dishonesty by peace deputies;

m. Ratifying by the highest levels of authority the specific unconstitutional acts alleged in this Complaint.

45. On August 17, 2020 and for some time prior thereto, Defendant County of San Bernardino knew or should have known that Defendant MORA and STEUERWALD had propensities for violence, dishonesty, and for abusing their

authority but failed to discipline, and ratified, acquiesced in, authorized, or directed the violent acts and abuses of power committed by those Deputies.

46. As a direct and legal result of the aforementioned wrongful acts of each individual Defendant, and the aforementioned policy, pattern, practice or custom of County, Defendant violated the rights of Plaintiff that are guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

47. Defendants' acts and omissions as herein alleged proximately caused Plaintiff's injuries.

48. As a direct and legal result of Defendants' acts and omissions, and the injuries of Plaintiff, he has suffered damages, including, without limitation, medical expenses, and the past and future pain and suffering, all to his general and special damages according to proof, including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

49. By reason of the aforementioned acts and omissions of Defendants, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs described herein. As a result, Plaintiff is indebted and liable for legal costs, including attorneys' fees.

**COUNT FOUR**
**INADEQUATE TRAINING - MUNICIPAL LIABILITY**
**(Against Defendant COUNTY OF SAN BERNARDINO and DOES 6 through 10)**

50. The allegations set forth in paragraphs 1-2 and 14-49are incorporated herein by reference.

51. On and for some time prior to August 17, 2020 (and continuing to the present date), Defendant County of San Bernardino and DOES 6 through 10 deprived Plaintiff of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendants

and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the safety, rights, and liberties of the public in general, and of Plaintiff, and of persons in their class, situation and comparable position, in particular, knowingly maintained, enforced and applied an official custom, policy, and practice of: (a) employing and retaining as police deputies and other personnel, including STEUERWALD, MORA, and DOES 1 through 5, who Defendants County of San Bernardino at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written County of San Bernardino's Sheriff Department policies and constitutional mandates regarding unreasonable seizures; (b) condoning and fostering unreasonable seizures by inadequately supervising, training, controlling, assigning, and disciplining County of San Bernardino Sheriff Deputies, and other personnel, including STEUERWALD, MORA, and DOES 1 through 5who the County each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits; (c) maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants STEUERWALD, MORA, and DOES 1 through 5, who are County of San Bernardino Sheriff Deputies Police Deputies; (d) failing to adequately train deputies regarding unreasonable seizures, including STEUERWALD, MORA, and DOES 1 through 5, and failing to institute appropriate policies, including constitutional procedures and practices for using deadly force; and (e) detaining and arresting individuals without probable cause or reasonable suspicion, using excessive force, including the use of deadly force, and denying or delaying medical treatment, which also is demonstrated by inadequate training and ratification of prior misconduct related to these subjects.

52. Defendants County of San Bernardino and DOES 6 through 10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants condoned, tolerated and through actions and inactions thereby ratified such polices. Such Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the Constitutional rights of Plaintiff, and other individuals similarly situated.

53. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, County of San Bernardino, and DOES 6 through 10 acted willfully, oppressively, maliciously, fraudulently, and with extreme offense- unconscionable to any person of normal sensibilities.

54. By reason of the aforementioned policies and practices of Defendants County of San Bernardino and DOES 6 through 10, Plaintiff suffered serious injuries and other harm.

55. These policies, practices, and customs implemented and maintained, and still are tolerated by County of San Bernardino, DOES 6 through 10, were affirmatively linked to and were significantly influential force behind the injuries of Plaintiff.

56. The conduct of by County of San Bernardino and DOES 6 through 10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff's rights, entitling him to an award for exemplary and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in their favor and against Defendants as follows:

a. For special and general damages, including loss of earnings, medical costs, and interest, in an amount according to proof;

b. For punitive damages against the individual defendants in an amount to be proven at trial;

c. For reasonable costs of this suit and attorneys' fees pursuant 42 U.S.C. § 1988; and

d. For such further relief as the Court may deem just, proper, and appropriate.

Dated: July 1, 2022                    THE SEHAT LAW FIRM, PLC


                                       By: */S/ Cameron Sehat*
                                       Attorney for Plaintiff